IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| CHERLYE FOREMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No: 5:20-cv-05123-PKH |
| | § | |
| GATES CORPORATION | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Cherlye Foreman ("Plaintiff") and files this Plaintiff's Original Complaint.

### I.    JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 1331 because Plaintiff asserts claims under The Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA").

2. Venue is appropriate because Defendant employed the Plaintiff in Benton County, Arkansas and the events giving rise to this action occurred within this judicial district.

### II.    PARTIES

3. Cherlye Foreman is an individual who performed work for Defendant in Benton County, Arkansas.

4.      Gates Corporation is a company registered and doing business in the state of Arkansas.

### III.   FACTS

5.      Defendant operates a facility for manufacturing industrial and automotive belts in Northwest Arkansas.

6.      Defendant employed 50 or more employees within a 75-mile radius of Plaintiff's worksite.

7.      Plaintiff first started working for Defendant more than two years ago at its facility in Siloam Springs, Arkansas as a profiler.

8.      Plaintiff always gave her best efforts to the job and was by all accounts an excellent employee.

9.      Plaintiff received high praise from her supervisors for her work ethic and ability to fix most machines.

10.     Unfortunately Plaintiff suffered a serious medical condition in February 2019.

11.     An injury caused damage to Plaintiff"'s rib cage and was told by a doctor that she had air and stretched muscles in her chest cavity.[1]

12.     The pain was so unbearable that Plaintiff could not even sit in a chair.

13.     Plaintiff was so injured that she could not work, had trouble dressing herself, and could barely walk or get out of bed, rendering her incapacitated for more than three consecutive calander days.

---

[1] Months after her employment ended, Plaintiff was diagnosed with metastatic breast cancer that spread to her spine. Plaintiff's doctors believe her February 2019 injury was related to her cancer.

14.     For this injury, Plaintiff visited health care providers on five occasions, which included multiple trips and continuing treatment at the emergency room, urgent care clinic, and to her primary care doctor.

15.     Plaintiff was prescribed a continuing treatment of medicine to take for her condition until she was able to work again and was given shots during some of these visits to health care providers.

16.     After calling in sick for three days with Defendant, and keeping them updated on her situation, Plaintiff was told to deal exclusively with Aetna regarding her leave and medical condition.

17.     Plaintiff was specifically instructed to no longer contact Defendant until she was released to return to work.

18.     It was made abundantly clear to Plaintiff, that all contact should be through Aetna.

19.     Plaintiff applied for FMLA leave through Aetna as instructed and was told that her FMLA leave was approved.

20.     At Defendant's request, Plaintiff kept Aetna informed of her medical condition.

21.     On the Aetna website,   Plaintiff noticed that her FMLA leave was to be terminated on March 14, 2019 without her yet being released by her doctor.

22.     Plaintiff immediately called Aetna regarding this mistake and informed Aetna that she had not been released by her doctor and didn't expect to get released until March 28, 2019.

23.     Aetna told Plaintiff not to worry about it and it would soon be updated to reflect a new date.

24.     Approximately one week later when this date was still not updated, Plaintiff again contacted Aetna.

25.     Aetena again told Plaintiff to not worry about what was on the website regarding FMLA leave as it would be updated.

26.     Strangely, despite showing FMLA leave being over, the website showed Plaintiff on LOA until March 28, 2019.

27.     On the morning of March 28, 2019, Plaintiff went to her doctor and obtained a release to return to work.

28.     Immediately after seeing her doctor, Plaintiff physically went to her job site to give them the return to work paperwork and discuss her return to work start date because of the difficulty she had with Aetna.

29.     Upon arriving at work, human resources told Plaintiff that she was about to be terminated because she should have returned to work on March 14, 2019.

30.     Human resources further stated that a letter was sent to Plaintiff''s house stating that she must return to work on or before March 28, 2019.

31.     Plaintiff politely explained the situation to human resources and started work since she was already at the facility and wanted to comply with the alleged letter that was sent by Defendant.

32.     After explaining the situation to human resources (who contacted Atena) Plaintiff worked for approximately two hours on March 28, 2019 and then was terminated.

33.     Defendant used these two hours to manufacture a false reason for termination.

34.     After her termination, Plaintiff received correspondence from Atena officially extending her medical leave until April 2, 2019.

35.     The Defendant's actions were willful.

### IV.     FMLA INTERFERENCE

36.     Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

37.     Plaintiff qualified for FMLA leave and Defendant was required to provide it.

38.     After a request, Defendant failed to provide the requested FMLA leave for Plaintiff.

39.     After requesting leave,  Defendant failed to reinstate Plaintiff to her former position.

40.     Because of the actions of Defendant, Plaintiff has suffered damages within the jurisdictional limits of this Court.

### V.     FMLA RETALIATION

41.     Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully set forth herein.

42.     Defendant unlawfully retaliated against Plaintiff by terminating her for exercising her right to leave.

43.     Because of the action of Defendant, Plaintiff has suffered damages within the jurisdictional limits of this Court.

### VI.     JURY DEMAND

44.     Plaintiff exercises the right to a Jury.

## VII.    DAMAGES

WHEREFORE, Plaintiff respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, she be awarded:

i.      Plaintiff seeks her economic damages, including lost wages (back and front pay), benefits, lost economic opportunity, and actual damages.

ii.     Plaintiff seeks appropropriate equitable relief such as reinstatement.

iii.    Plaintiff seeks liquidated damages in an amount equal to her economic damages.

iv.     Plaintiff seeks her attorney's fees and costs of court.

v.      Plaintiff seeks pre and post-judgment interest at the maximum rate allowed by law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon a trial on the merits, Plaintiff be awarded the relief requested in this Complaint and such other and further relief to which she may be justly entitled.

Respectfully submitted,

Gregory A. Placzek
Bar Number 2017271
Attorney for Plaintiff
Placzek Law Firm, PLLC
130 N College Ave  Suite D
Fayetteville, Arkansas 72701
Telephone: (479) 935-3321
E-mail: greg@nwaemploymentlaw.com